IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SATERIKA SPATES                                            PLAINTIFF

V.                  Case No. 4:24-CV-00320-BRW-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration                         DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.  INTRODUCTION**

On February 22, 2021, Plaintiff Saterika Spates ("Spates") filed a Title XVI application for supplemental security income. (Tr. at 24). In the application, she alleged disability beginning on January 30, 2021.[1] *Id*. The application was denied initially and on reconsideration. *Id*.

---

[1] She subsequently amended her alleged onset date to July 14, 2020, requesting to reopen a prior application for benefits that had been denied. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied Spates's application by written decision, dated April 5, 2023.[2] (Tr. at 24–35). The Appeals Council denied Spates's request for review of the ALJ's decision on October 13, 2023. (Tr. at 12–16). The ALJ's decision now stands as the final decision of the Commissioner, and Spates has requested judicial review. For the reasons stated below, the Commissioner's decision should be affirmed.

## II.   THE COMMISSIONER'S DECISION

Spates was 29 years-old on the alleged onset date of disability, and she has a limited education. (Tr. at 33). The ALJ found that Spates has not engaged in substantial gainful activity since February 22, 2021, the alleged onset date.[3] (Tr. at 26). At Step Two, the ALJ determined that Spates has the following severe impairments: bipolar disorder, intermittent explosive disorder, borderline personality disorder, and schizoaffective disorder. (Tr. at 27).

At Step Three, the ALJ determined that Spates's impairments did not meet or equal

---

[2] The ALJ also found no reason to reopen the prior application. (Tr. at 25).

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Additionally, since the ALJ found no basis for reopening the prior application, the beginning of the relevant time-period is the application date, as is the case for all supplemental security income claims.

a Listing.[4] (Tr. at 28–29). The ALJ determined that Spates has the residual functional capacity ("RFC") to perform work at all exertional levels, with the following restrictions: (1) limited to simple, repetitive work with simple work-related decisions; (2) can deal with changes in a routine work setting but not a production-rate pace (e.g., no assembly-line work); and (3) no more than occasional interaction with supervisors, coworkers, and the public. (Tr. at 29).

Spates has no past relevant work. (Tr. at 33). Relying upon the testimony of a vocational expert ("VE"), the ALJ found, based on Spates's age, education, work experience, and RFC, that there are jobs in the national economy that Spates can perform. (Tr. at 33–35). Therefore, the ALJ concluded that Spates was not disabled from the alleged onset date through the date of the decision. (Tr. at 35).

## III.   DISCUSSION

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42

---

[4] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). Relatedly:

> The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' . . . That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (emphasis in original) (internal citations omitted).

3

U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.    Spates's Argument on Appeal

Spates contends that the evidence supporting the ALJ's decision is less than substantial, arguing solely that the ALJ did not properly consider or evaluate the medical-opinion evidence from the state-agency psychological consultants—Dr. Diane Kogut and Dr. Julie Bruno. For the reasons stated herein, this argument is unavailing.

#### 1.    Spates's Mental Health

Spates was diagnosed with bipolar disorder, intermittent explosive disorder, and

borderline personality disorder in 2020. (Tr. at 895, 937). In June 2020, Spates began mental health counseling. In June 2021, her provider noted that Spates was managing her anger better, and Spates denied depression or mood swings. (Tr. at 1055, 1058). But the ALJ noted that Spates did not always take her medication as it was prescribed and that her symptoms got worse if she did not.[5] (Tr. at 31, 1055). In April and July 2022, Spates reported that her mood was better and that her medications were working.[6] (Tr. at 1239, 1287).

### 2. State-Agency Medical Opinions

Two state-agency psychological consultants reviewed Spates's records and found that Spates had moderate limitations in interacting socially and maintaining concentration, persistence, or pace that restricted her to work where interpersonal contact was incidental to the work performed; complexity of tasks is learned and performed by rote with few variables, and little judgment; and required supervision in simple, direct, and concrete. (Tr. at 32; 92). One of the providers also noted a moderate restriction in adapting and managing oneself. *Id.* at 32. The ALJ found these opinions to be partially persuasive, and he incorporated portions of their opinions into the RFC. Spates argues that this was error, claiming that the ALJ provided no meaningful explanation for why he departed from the state-agency medical opinions or why the ALJ omitted the recommended limitation to

---

[5] Refusal to follow a prescribed course of treatment undercuts a claimant's allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (citations omitted).

[6] "Impairments that are controllable or amenable to treatment do not support a finding of total disability." *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999).

"incidental interpersonal contact."[7]

Contrary to Spates's assertions, however, the ALJ discussed a wide array of evidence when he evaluated the two state-agency medical opinions. (Tr. at 32–33). And, the ALJ determined that, while Spates has some moderate mental limitations, the mental RFC was more consistent with the overall record. (Tr. at 33). For example, the ALJ noted that Spates's daily activities included preparing simple meals, cleaning, and doing laundry.[8] (Tr. at 32). She could shop in stores, which the ALJ said showed she had some ability to interact with others. (Tr. at 33, 238). At counseling visits, Spates had average eye contact, appropriate affect, and cooperated with providers. *Id*.; (Tr. at 619–621, 665, 703, 892–893, 1316). She also demonstrated logical and goal-directed thought process. (Tr. at 701–703, 893, 1241, 1289).

The ALJ wrote that the expert opinions were partially persuasive because they were generally supported by and consistent with the overall record, addressing both consistency

---

[7]ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citations omitted). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citations omitted).

[8] Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (holding that daily tasks such as cooking, cleaning, visiting friends and relatives, and attending church undermined the party's claims of disability); *see, e.g., Milam v. Colvin*, 794 F.3d 978, 982 (8th Cir. 2015) (cooking, cleaning, showering, shopping); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (driving, shopping, bathing, and cooking); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012), 680 F.3d at 1067 (vacations, daily chores, providing self-care); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (some housework, cooking, and shopping).

and supportability. The ALJ, however, only incorporated into the RFC the restrictions he found credible.[9] The ALJ did not have to cite verbatim to the expert opinions when he crafted the RFC; his evaluation of the medical opinions was proper under the applicable law.

Notwithstanding, Spates finds fault, in particular, with the ALJ's decision to assign an RFC for work with only "occasional" interpersonal contact, while the state-agency medical consultants opined that interpersonal contact should be "incidental" to the work performed. (Doc. 8 at 13). Spates cites to non-binding case law for this argument, attempting to drum up a contradiction where none exists. This court has held that a "limitation to *occasional* contact is harmonious with [a state agency psychologist's] restriction to *incidental* interpersonal contact." *Turner v. Soc. Sec. Admin.*, No. 4:23-CV-00684-JTK, 2024 WL 964176, at *3 (E.D. Ark. Mar. 6, 2024) (citing *Newberry v. Saul*, No. 3:19-CV-00192-PSH, 2020 WL 2203843, at *2–8 (E.D. Ark. May 6, 2020)) (emphasis added). The ALJ's assigned RFC reflected the limitations demonstrated in the record, and he properly considered and incorporated the relevant and credible portions of the medical opinions.[10] Reversal is not warranted.

---

[9] An ALJ can decline to incorporate any portions of an opinion that he deems inconsistent. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). Additionally, "The Commissioner may also assign 'little weight' to a treating physician's opinion when it is either internally inconsistent or conclusory." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Chesser v. Berryhill*, 858 F.3d 1161, 1164–65 (8th Cir. 2017)).

[10] Spates argues that the hypothetical posed to the VE at Step Five should have included the word incidental, but an ALJ is only required to pose hypotheticals reflective of the credible limitations in the record. He does not have to incorporate verbatim all of the opinion evidence. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992).

7

## IV.   CONCLUSION

There is substantial evidence on the record as a whole to support the Commissioner's decision that Spates was not disabled. The ALJ properly considered and evaluated the state-agency medical opinions, finding them partially persuasive in light of the overall record.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 25th day of November, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE